IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PPG INDUSTRIES, INC.,       )
         Plaintiff,       )
         )
         vs       )       Civil Action No. 08-46
         )
T & T TRUCKING, INC.,       )
         Defendant and Third Party       )
         Plaintiff,       )       Judge Lancaster
         )       Magistrate Judge Mitchell
         vs       )
         )
PORTOLA MINERALS CO., INC. d/b/a       )
BLUE MOUNTAIN MINERALS,       )
         Third Party Defendant.       )

REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the motion to dismiss third party complaint for improper venue and lack of personal jurisdiction, submitted on behalf of Third Party Defendant Portola Minerals Co., Inc. d/b/a Blue Mountain Minerals (Docket No. 24), be granted.

II.      Report

Plaintiff, PPG Industries, Inc. ("PPG"), filed this action against Defendant, T & T Trucking, Inc. ("T & T"), arising out of a contract entered into by the parties on April 1, 1996, pursuant to which T & T was to haul limestone and dolomite to PPG's plant in Fresno, California. PPG alleges that T & T breached its contractual responsibilities and acted negligently when, on June 6, 2007, it deposited a load of dolomite into a storage silo that was designated exclusively for limestone. PPG asserts that the dolomite contaminated the limestone, thereby causing it to suffer significant economic losses.

T & T has filed a Third Party Complaint against Portola Minerals Co., Inc. d/b/a Blue Mountain Minerals ("Blue Mountain"). T & T alleges that the confusion over the materials–which T & T had picked up from Blue Mountain's facility in Columbia, California–resulted from an error on Blue Mountain's part and was not the fault of T & T. Therefore, T & T seeks indemnification and/or contribution from Blue Mountain for any liability it may owe to PPG.

Presently before this Court for disposition is a motion to dismiss for improper venue[1] and/or lack of personal jurisdiction, brought by Blue Mountain. For the reasons that follow, the Court should conclude that T & T has failed to establish that personal jurisdiction may be asserted over Blue Mountain. Therefore, Blue Mountain's motion should be granted and the Third Party Complaint should be dismissed.

Facts

On April 1, 1996, PPG and T & T entered into an Intrastate Transportation Agreement ("Transport Agreement"), pursuant to which T & T was to transport materials for PPG. (Compl. ¶ 4 & Ex. A.)[2] Specifically, pursuant to the Transport Agreement, T & T was required, inter alia, to:

(a) provide a prompt and efficient service designed to meet the specific standards imposed by PPG, including scheduling pickups and deliveries as required by PPG

_____

[1]    Although the motion refers to improper venue, the issue is not discussed in Blue Mountain's brief. Moreover, it is noted that, pursuant to the doctrine of ancillary venue, an independent basis for venue of third-party claims is not required and a third party defendant has no standing to raise a defense that venue is improper. One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824, 828-29 (E.D. Va. 2004). Therefore, the issue of venue will not be discussed herein.

[2]    Docket No. 1.

and providing specially qualified and trained personnel, including drivers (Transport Agreement ¶ 3.1 & App. 2, Nos. 1, 11);

(b) accept, transport and deliver such freight as PPG shall request T & T to transport (Id. ¶ 7); and

(c) be liable for any loss or damage resulting from T & T's failure to properly perform its obligations under the Agreement (Id. ¶ 12).

PPG entered into two Material Purchase Agreements with Blue Mountain, one for the purchase of limestone on July 21, 2005 and one for the purchase of dolomite on February 8, 2005. (Third Party Compl. ¶ 5 & Exs. 2, 3.)[3] Dolomite and limestone are materials that are used in the glass making process. Although dolomite and limestone are visually similar in appearance, their chemical properties are very different, requiring the two materials to be stored in separate locations. Specific amounts of each material are used in the process of manufacturing certain glass products, and improper portions of the individual materials results in defects in the glass. (Compl. ¶¶ 8-10.)

On or about June 6, 2007, PPG instructed T & T to pick up four truck loads of limestone and one load of dolomite at the Blue Mountain quarry in Columbia, California (the "Quarry") and transport them to PPG's glass-manufacturing plant in Fresno, California (the "Plant"). On June 6, 2007, T & T dispatched a driver to pick up a truck load of limestone from the Quarry. PPG alleges that this driver was unfamiliar with both the procedures at the Quarry and the requirements of PPG. (Compl. ¶¶ 7, 11-12.)

PPG alleges that, notwithstanding his instructions to pick up a load of limestone, T & T's driver instead drove to the section of the Quarry where dolomite is loaded and had dolomite

---

[3]     Docket No. 22.

loaded onto his truck. It further alleges that, in accordance with regular operating procedures, Blue Mountain issued to the driver a bill of lading which stated that dolomite had been loaded onto the truck. Notwithstanding the fact that dolomite had been loaded onto the truck, upon arrival at the Plant, T & T's driver informed PPG personnel that he was delivering a load of limestone. The driver then proceeded to the area designated for limestone storage and unloaded the dolomite material. Upon review of the paperwork shortly after the delivery, PPG personnel realized the mistake. (Compl. ¶¶ 13-17.)

T & T denies some of these allegations. In its Third Party Complaint, it alleges that its driver requested to have the truck loaded with limestone but was erroneously directed to a loading area where dolomite was loaded onto the truck by Blue Mountain. Although it admits that Blue Mountain issued to the driver a bill of lading which stated that dolomite had been loaded onto the truck, it indicates that the bill of lading was not issued in accordance with regular operating procedures in that a large red stamp which read "DOLOMITE" was not put on the bill of lading. T & T further alleges that, when the driver arrived at the Plant, PPG personnel reviewed the bill of lading that indicated the load was dolomite but nevertheless directed the driver to proceed to the limestone storage area, where he unloaded the dolomite. (Third Party Compl. ¶¶ 11-13.)

PPG asserts that, because of the cross-contamination of materials, the production of glass at the Plant was immediately suspended. The Plant was unable to produce glass for approximately forty (40) hours. PPG expended substantial financial and human resources to remove a significant amount of dolomite and cross-contaminated limestone from the affected limestone storage facility. (Compl. ¶¶ 18-20.)

PPG further contends that, once production resumed, it experienced glass imperfections at unacceptable levels, leading to loss of product. PPG alleges that, as a direct and proximate result of the failure of T & T to perform its obligations as required by the Transport Agreement, and to act in a commercial reasonable manner, PPG has incurred substantial damages, including but not limited to damages associated with: removal of cross contaminated material, testing and monitoring material once production resumed, loss of saleable production, and interruption of its business operations. (Compl. ¶¶ 21-22.)

Procedural History

Plaintiff filed this action on January 11, 2008. Jurisdiction is based on diversity of citizenship because PPG is a Pennsylvania corporation with a principal place of business in Pittsburgh, Pennsylvania; T & T is a California corporation with a principal place of business in Lodi, California; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Compl. ¶¶ 1-3.) Venue is asserted to be proper in this district because: 1) the Transport Agreement between PPG and T & T upon which PPG's breach of contract cause of action is based was formed in this district; and 2) the Agreement contains a forum selection clause which confers personal jurisdiction over T & T in this district. (Compl. ¶ 4 & Ex. A ¶ 26.)[4] Count I alleges that T & T breached its contractual obligations by failing to meet the specifications of PPG and failing to provide adequately trained and qualified personnel. Count II alleges that this conduct constituted negligence on the part of T & T.

On June 4, 2008, T & T filed a Third Party Complaint against Blue Mountain (Docket

---

[4] T & T admits that the forum selection clause in the Transport Agreement confers personal jurisdiction over it in Pennsylvania. (Answer ¶ 4; Third Party Compl. ¶ 5.)

No. 22).  Jurisdiction is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).

Count I seeks indemnification and Count II seeks contribution.

On June 30, 2008, Blue Mountain filed a motion to dismiss for lack of personal

jurisdiction and improper venue.  It contends that the Court lacks personal jurisdiction over it for

claims arising out of contracts negotiated and performed in California and that it has no contacts

with the Commonwealth of Pennsylvania that would support an exercise of personal jurisdiction

over it.  T & T responds that Blue Mountain entered into multi-year contracts with PPG, a

Pennsylvania-based corporation, that one of these agreements was signed by Thomas S. Mauck,

Vice President of Protective and Marine Coatings for PPG, whose office is located in Pittsburgh,

that the contracts contained multiple provisions requiring Blue Mountain to conduct business

with PPG's home office, and that the contracts contained a clause which indicated that they were

to be governed by Pennsylvania law.

Personal Jurisdiction

"Once it is challenged, the burden rests upon the plaintiff to establish personal

jurisdiction.  A nexus between the defendant, the forum and the litigation is the essential

foundation of *in personam* jurisdiction."  General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d

Cir. 2001) (citation omitted).  "The plaintiff must sustain its burden of proof through 'sworn

affidavits or other competent evidence.'"  North Penn Gas v. Corning Natural Gas Corp., 897

F.2d 687, 689 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735

F.2d 61, 67 n.9 (3d Cir. 1984)).  The court initially must "accept all of the plaintiff's allegations

as true and construe disputed facts in favor of the plaintiff," although it can reconsider the issue

"if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an

evidentiary hearing to resolve any disputed facts. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992).

There are two alternative ways to establish personal jurisdiction. "General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are 'continuous and systematic.'" BP Chemicals, Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984)). Specific personal jurisdiction, on the other hand, arises from a defendant's forum-related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citations omitted).

In Burger King the Supreme Court found that the United States District Court for the Southern District of Florida had personal jurisdiction over the defendant, a Michigan resident, who allegedly had breached a 20-year franchise agreement with a Florida corporation in failing to make required payments in Florida. The Court noted that a contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum. However, in that case the "franchise dispute grew directly out of 'a contract which had a substantial connection with that state.'" Id. at 479 (citation omitted). The Court stated that "[i]t is these factors–prior negotiations and contemplated future consequences, along with terms of the contract and the parties' actual course of dealing–that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Id.

After it has been determined that a defendant purposefully established minimum contacts,

"these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Id. at 477 (citing International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed.R.Civ.P. 4(k)(1)(A). North Penn Gas, 897 F.2d at 689. Pennsylvania authorizes its courts to exercise maximum general and specific jurisdiction over corporations. The plaintiff may show specific jurisdiction pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a) by showing that the defendant has engaged in forum-related activities.

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). See Kubik v. Letteri, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

General Personal Jurisdiction

With respect to the issue of Blue Mountain's contacts with Pennsylvania in general, Fred Esch, an officer of Blue Mountain (Esch Aff. ¶ 1),[5] states that:

> Blue Mountain's mining operations are located exclusively within the State of California.
>
> Blue Mountain sells the vast majority of its minerals to business operations located in California; Blue Mountain sells a small amount of its minerals to business operations located in neighboring states.

---

[5]     Blue Mountain's Mot. Dismiss (Docket No. 24) Ex. 1.

Blue Mountain does not sell any of its minerals to business operations located in Pennsylvania.

Blue Mountain does not solicit, advertise or otherwise promote its business within Pennsylvania.

Blue Mountain's only contact with Pennsylvania consists of two contracts (one for limestone and one for dolomite) entered into with PPG Industries, Inc., which is headquartered in Pittsburgh, Pennsylvania.

(Esch Aff. ¶¶ 3-7.)

T & T has not submitted any affidavits to contest this testimony. It argues that "sufficient contacts exist between PPG and [Blue Mountain] for the exercise of general jurisdiction given the length of the subject contracts, the choice of law clause and the anticipated communications under the contract." (Docket No. 30 at 10.) This argument is unavailing for two reasons. First, when a corporation makes a small percentage of its sales in the forum state, that fact weighs against concluding that the corporation has "continuous and systematic" contacts with the state. See Modern Mailers v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1054 (E.D. Pa. 1994) (less than 0.5% of total sales insufficient); Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 494, 498-99 (M.D. Pa. 1992) (approximately 1% of sales made to Pennsylvania residents insufficient); Derman v. Wilair Servs., Inc., 590 A.2d 317, 324 (Pa. Super.) (approximately 1.5% of business of aircraft maintenance corporation done with Pennsylvania residents insufficient), appeal denied, 600 A.2d 537 (Pa. 1991). Blue Mountain has asserted that the vast majority of its sales are to businesses in California, that it makes a few sales to businesses in neighboring states, and that its only contact with Pennsylvania consists of the two Material Purchase Agreements with PPG. T & T has not provided any basis for the Court to conclude that the two Material Purchase Agreements with PPG for limestone and dolomite represented anything more than a small

9

percentage of Blue Mountain's sales.

Second, these alleged contacts do not constitute contacts with Pennsylvania by Blue Mountain because, as explained below, there is no evidence that they were negotiated in Pennsylvania, the deliveries were made wholly within the state of California, and the communications to which T & T refers did not require Blue Mountain to contact PPG in Pennsylvania. In summary, T & T has provided no basis upon which to conclude that Blue Mountain has "continuous and systematic contacts" with Pennsylvania such that general personal jurisdiction can be asserted over Blue Mountain in this state.

Specific Personal Jurisdiction

Determining whether specific personal jurisdiction can be exercised over a defendant is claim specific. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). In Remick, the Court of Appeals concluded that the district court in Pennsylvania had specific personal jurisdiction over an Indiana client and his Illinois agent with respect to his former attorney's breach of contract and tortious interference with contractual relations claims, but did not have specific personal jurisdiction over the attorney's defamation and misappropriation of image claims.

In Count I, PPG alleges breach of contract by T & T, for which T & T seeks contribution and/or indemnity from Blue Mountain. "In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Id. at 256 (citation omitted). See also General Elec., 270 F.3d at 150 ("In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach.").

10

T & T argues that Blue Mountain entered into two multi-year agreements with PPG, a

Pennsylvania corporation, for purposes of selling the dolomite and limestone.  Nevertheless, the

Court of Appeals has noted that:

> The fact that a non-resident has contracted with a resident of the forum state is
> not, by itself, sufficient to justify personal jurisdiction over the nonresident.  The
> requisite contacts, however, may be supplied by the terms of the agreement, the
> place and character of prior negotiations, contemplated future consequences, or
> the course of dealings between the parties.

Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Burger

King, 471 U.S. at 479).  In Farino, the Court of Appeals held that specific personal jurisdiction

could be asserted over nonresident guarantors sued by a bank for breach of guarantee and

suretyship agreements based upon the following facts: 1) the defendants solicited the bank and

established a business relationship with it, a Pennsylvania entity; 2) they reached out beyond one

state and deliberately created continuing relationships and obligations with a Pennsylvania bank

by making payments into Pennsylvania and requesting extensions of loans over a three-year

period; and 3) they supplied personal financial information and secured the debts not only with

mortgages on properties but also with personal guaranties.  Id. at 1223-26.

In Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147 (3d

Cir. 1996), Vetrotex, a Pennsylvania seller of fiber glass products, brought suit against Conglas, a

California buyer of its products, and the Court of Appeals held that personal jurisdiction was

lacking because:

> The only contacts that Conglas had with Pennsylvania consisted of some
> telephone calls and letters written to Vetrotex in Pennsylvania.  However, this
> Court has recognized that "informational communications in furtherance of [a
> contract between a resident and a nonresident] do not establish the purposeful
> activity necessary for a valid assertion of personal jurisdiction over [the
> nonresident defendant]."

Id. at 152 (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993)).

The court distinguished other cases in which the nonresident defendant had actively solicited the

contract or initiated the business relationship, sent payments into the forum state, or engaged in

extensive post-sale contacts with the forum state.  Id. at 152-53.  In addition, the court refused to

consider negotiations that occurred between Vetrotex and Conglas in previous contracts over a

decade before, because for purposes of specific personal jurisdiction the only dealings between

the parties that are relevant are those related to the disputed contract.  Id. at 153.

In Remick, the court concluded that personal jurisdiction could be asserted over the

breach of contract claim brought by a Pennsylvania attorney (Remick) against a former client

(Manfredy) who had solicited Remick to represent him in Pennsylvania.  The court noted that:

> Remick's contract claim is comparable to those distinguished in Vetrotex.
> According to Remick's affidavit, Manfredy sought Remick out by placing a
> telephone call to Remick's associate Resnick at their office in Philadelphia.  This
> solicitation eventually resulted in the fee agreement between Remick and
> Manfredy, which Remick signed in, and Manfredy signed and returned to,
> Pennsylvania.  The agreement noted that its formality was required by the
> Pennsylvania Rules of Professional Conduct, suggesting that Manfredy was
> receiving the benefit of Pennsylvania law under the agreement.  In addition, at
> least one payment was sent by Manfredy to Remick at his Philadelphia office.
> Most of the services performed by Remick on behalf of Manfredy were conducted
> at Remick's Philadelphia office, and Manfredy certainly should have expected as
> much as he knew that Remick's home office is in Philadelphia.
>
> Finally, there were repeated "informational communications" during the
> course of the contractual relationship between Manfredy and Remick with Remick
> at his Philadelphia office, including the final communication–Manfredy's
> termination letter of March 2, 1998.  See Grand Entm't Group, Ltd. v. Star Media
> Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone
> communications sent by the defendant into the forum may count toward the
> minimum contacts that support jurisdiction.").  These facts as a whole involved
> more entangling contacts than the mere "informational communications" at issue
> in Vetrotex.

238 F.3d at 256. Finally, in General Electric, the court held that personal jurisdiction was

properly asserted over a German corporation that, in its role of guaranteeing its subsidiary's

contract with General Electric to manufacture diesel engines, made trips to Pennsylvania and

assumed long-term obligations. 270 F.3d at 151-52.

With respect to the specifics of the Material Purchase Agreements, Mr. Esch states that:

> All contract negotiations between PPG and Blue Mountain took place in California with PPG employees of the company's glass manufacturing facility in Fresno, California.

> All of Blue Mountain's limestone and dolomite sold to PPG under the above-referenced contracts was delivered to PPG's plant in Fresno, California, and were intended for use exclusively at the Fresno facility.

> No one from Blue Mountain came to the Commonwealth of Pennsylvania with regard to negotiation or performance of the contracts.

> Because all events giving rise to this cause of action occurred in California, all witnesses and pertinent documents are in California.

(Esch Aff. ¶¶ 8-11.)

Blue Mountain also notes that, unlike the Transport Agreement between PPG and T & T,[6]

the two Material Purchase Agreements between PPG and Blue Mountain do not contain forum

selection clauses. Thus, Blue Mountain argues that no provision of its contracts with PPG and

no circumstances surrounding the contracts provide a basis for exercising personal jurisdiction

over it in Pennsylvania.

In response, T & T argues that one of the Material Purchase Agreements was signed by

Thomas S. Mauck, Vice President of Protective and Marine Coatings for PPG, whose office

---

[6]     Paragraph 26 of the Transport Agreement provides that "[a]ny legal actions filed pursuant to this Agreement shall be brought in the United States District Court for the Western District of Pennsylvania in Pittsburgh, PA."

appears to be located at the company's Pittsburgh headquarters, One PPG Place, Pittsburgh, PA

15272-0001, according to PPG's corporate directory.  (Decl. of Counsel ¶ 2 & Ex. A.)[7]  Blue

Mountain notes that paragraph 16 of both Material Purchase Agreements indicates that PPG's

contact for purposes of notice is William H. Bloom, whose office is listed as 11601 United

Street, Mojave, California 93501.  (Third Party Compl. Exs. 2, 3 ¶ 16.)  Furthermore, Mr. Bloom

is referred to as the "purchasing negotiator" on a document entitled "PPG Industries, Inc. –

Contract Commitment Abstract," which relates to the dolomite contract although it is

erroneously attached to the limestone contract.

Blue Mountain asserts that both contracts were signed by Mr. Bloom.  In fact, the

signature on page 1 of the limestone contract is that of Mr. Bloom (Third Party Compl. Ex. 2 at

1), while the signature on the dolomite contract is that of Mr. Mauck (Third Party Compl. Ex. 3

at 1.)

Nevertheless, the fact that Mr. Mauck may have signed the dolomite contract does not

negate Blue Mountain's assertions–which T & T has not rebutted–that the contracts were

negotiated in California, that no one from Blue Mountain came to Pennsylvania with regard to

negotiation or performance of the contracts and that all of Blue Mountain's limestone and

dolomite sold to PPG under the contracts was delivered to PPG's plant in Fresno, California, and

were intended for use exclusively at the Fresno facility.  Thus, the evidence demonstrates that the

contracts were negotiated solely in California and that they contemplated performance solely

---

[7]     Docket No. 31.  The directory does not actually provide the location of Mr. Mauck's office.  However, this fact is implied because the officers and management personnel are listed under PPG's corporate headquarters location and his telephone number is identical to the headquarters' main number.

within California.

T & T also argues that the contracts contain numerous provisions requiring contact and negotiation between PPG's Pittsburgh headquarters and Blue Mountain: 1) section 2, subsection (b) indicates that PPG is to notify Blue Mountain that it has received a competitive offer and request that Blue Mountain meet it within 15 working days; 2) section 3(b) requires Blue Mountain to "arrange and pay for shipment" of materials to PPG and to "immediately advise" PPG if it cannot pick up the materials; 3) section 4 requires Blue Mountain to notify PPG of any delay in delivery of materials; and 4) section 11 mandates that Blue Mountain provide PPG with Material Safety Data Sheets ("MSDS") for hazardous materials, requiring that the first MSDS be sent to PPG's facility that purchased the material and that any subsequent MSDS be sent both to that facility and to PPG's Product Safety Department in Allison Park, Pennsylvania.

However, with the exception of the last item, none of the provisions in fact direct Blue Mountain to send information into Pennsylvania.[8] They merely indicate that Blue Mountain had to provide certain notices to PPG, but do not indicate where such notices are to be sent. Moreover, the notice provision of the contracts specifically indicates that the contact person is William Bloom, whose address is in Mojave, California. Thus, these provisions do not demonstrate ongoing contacts by Blue Mountain with Pennsylvania.

T & T notes that paragraph 17(e) of the Material Purchase Agreements states that:

> This Agreement is made under Pennsylvania law and shall be governed by and construed in accordance with the Uniform Commercial Code as adopted in Pennsylvania, except as the provisions of such Code are herein varied.

---

[8] T & T has not asserted that Blue Mountain actually provided PPG with any MSDS by sending it to Allison Park, Pennsylvania.

(Third Party Compl. Exs. 2, 3 ¶ 17(e).)  However, as Blue Mountain observes, this is a choice of

law provision, not a forum selection clause.  By contrast, the Transport Agreement also contains

a choice of law provision (which indicates that California law should be applied to disputes

arising out of the contract)[9] but nevertheless directs that any claims should be filed in this district.

These clauses are distinct and serve different functions.

T & T contends that a choice of law provision is a relevant consideration, citing Sunward

Electronics, Inc. v. McDonald, 362 F.3d 17 (2d Cir. 2004).  In that case, the court held that

personal jurisdiction could be asserted in a trademark infringement action over an Alabama

system dealer in part because the dealership agreement contained a New York choice of law

clause and "[a] choice of law clause is a significant factor in a personal jurisdiction analysis

because the parties, by so choosing, invoke the benefits and protections of New York law."  Id. at

23 (citations omitted).

In Burger King, the Supreme Court held that a choice of law clause alone is insufficient

to confer jurisdiction, but when combined with other factors, it may constitute purposeful

availment.  471 U.S. at 482.  In the Sunward case, the court concluded that the choice of law

provision was sufficient when combined with the following other factors: 1) the defendants

maintained a continuous and on-going commercial relationship with a New York business,

including mailing payments and warranty cards to New York; 2) each of the individual

defendants traveled to New York on two occasions to attend training programs; 3) the defendants

purchased a substantial number of supplies from New York, possibly enough to confer personal

jurisdiction without any other factor; 4) the plaintiff continuously supervised and assisted the

---

[9]      Compl. Ex. A ¶ 25.

defendants during the term of the dealership agreement; and 5) the agreement itself imposed

duties such as a non-compete clause, such that even after it terminated the defendants continued

to have an ongoing relationship with a New York corporation to refrain from competing with it

for a year thereafter.  362 F.3d at 23.

T & T has not pointed to the existence of such other factors in this case.  T & T has not

argued, much less demonstrated, that Blue Mountain solicited PPG to enter into the Material

Purchase Agreements.  It has not cited any case that would exercise personal jurisdiction over a

defendant in these circumstances.[10]

T & T has failed to demonstrate that Blue Mountain's contacts with Pennsylvania are

sufficient for the Court to exercise personal jurisdiction over it.  T & T has not rebutted Blue

Mountain's evidence that the Material Purchase Agreements were negotiated entirely in the State

of California, that the contract was to be performed solely in California and that no one from

Blue Mountain came to Pennsylvania with regard to the negotiation or performance of the

contracts.  The choice of law provision standing alone is insufficient and although the contracts

contemplated Blue Mountain providing notices to PPG, the notice provision explicitly directs

that such notice was to be made to Mr. Bloom in California.  Therefore, T & T has not supported

its argument that Blue Mountain's contacts with Pennsylvania allow for the exercise of specific

personal jurisdiction over it with respect to PPG's breach of contract claim against T & T and T

& T's assertion of contribution and/or indemnity claims from Blue Mountain arising therefrom.

---

[10]     Somewhat oddly, T & T's brief primarily cites cases from the Ninth Circuit and cites no cases from the Third Circuit.  As counsel is surely aware, this Court is bound to follow the decisions of the Third Circuit.

Negligence Claim

In Count II, PPG alleges negligence by T & T, for which T & T seeks contribution and/or indemnity from Blue Mountain.  For purposes of a non-intentional tort such as negligence, personal jurisdiction exists if the defendant has purposely directed its activities at the forum, if the litigation "arises out of or relates to" at least one of those activities and if the exercise of jurisdiction comports with fair play and substantial justice.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).[11]  T & T argues that a "but-for" test applies: if the plaintiff would not have suffered loss but for the defendant's activities, the element is satisfied, again citing cases from other circuits.  (Docket No. 30 at 13) (citing Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995); Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1270 n.21 (5th Cir. 1981); Creech v. Roberts, 908 F.2d 75, 80 (6th Cir. 1990)).

However, the Court of Appeals for the Third Circuit has explicitly held that "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test."  O'Connor, 496 F.3d at 323.  In that case, the court held that specific personal jurisdiction could be exercised over a Barbados resort when a patron, who had been enticed back to the resort by multiple mailings and phone calls that included invitations to utilize the resort's spa treatments, was injured when he slipped and fell.

In this case, by contrast, there is no evidence that Blue Mountain sought out PPG to sell limestone and dolomite to it.  Moreover, as described above, many of the contacts T & T alleges Blue Mountain has with Pennsylvania are not supported by the record and those that are

---

[11]     The court noted that a slightly refined version of this test applies to intentional tort claims.  Id. n.2.

present–two contracts, both negotiated and performed in California with a choice of law clause indicating that Pennsylvania law should be applied–are insufficient.

Because T & T has failed to make out a prima facie case of personal jurisdiction, the Court need not address whether fair play and substantial justice would render jurisdiction over Blue Mountain unreasonable. Vetrotex, 75 F.3d at 153 n.9.

For these reasons, it is recommended that the motion to dismiss third party complaint for improper venue and lack of personal jurisdiction, submitted on behalf of Third Party Defendant Portola Minerals Co., Inc. d/b/a Blue Mountain Minerals (Docket No. 24), be granted.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


Respectfully submitted,


s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge


Dated: August 4, 2008